1998 ME 46

**PEPPERELL TRUST COMPANY**

v.

**MOUNTAIN HEIR FINANCIAL CORP.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 24, 1997.

Decided March 5, 1998.

Robert P. Brown, Wells, for plaintiff.

James L. Audiffred, Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Pepperell Trust Company appeals from the judgments entered in the Superior Court (York County, *Fritzsche, J.*) in which the court entered a summary judgment against Pepperell on its complaint for declaratory relief, entered judgment after trial against Pepperell on its breach of contract claim, and entered judgment for Mountain

Heir Financial Corporation on its malicious prosecution counterclaim. We affirm the summary judgment as well as the judgment against Pepperell on its contract claim. Because we now hold that a claim of malicious prosecution, here more properly labeled wrongful use of civil proceedings, may not be brought as a counterclaim to the offending proceeding, we vacate the court's judgment in favor of Mountain Heir on its counterclaim.

[¶ 2] On June 12, 1988, Pepperell loaned money to Dana and Elmira Packard to finance the purchase of restaurant equipment. To perfect its security interest in the Packard's equipment, Pepperell recorded a financing statement in the Secretary of State's Office on June 14, 1988. On March 6, 1991, Mountain Heir loaned money to the Packards, similarly filing a financing statement. At the time of its loan, Mountain Heir knew that Pepperell had a superior security interest in the restaurant equipment. Pepperell, however, allowed its original financing statement to lapse by failing to file a continuation statement.[1] It later filed a new financing statement on August 15, 1994.

[¶ 3] When the Packards defaulted on their financial obligations during the summer of 1994, Mountain Heir scheduled a public auction of the restaurant equipment. Prior to the initiation of the auction on September 23, 1994, Pepperell filed a complaint seeking a declaratory judgment that its security interest in the equipment was superior to that of Mountain Heir. Simultaneously, Pepperell filed a motion for a temporary restraining order and a preliminary injunction. The court (*Cole, C.J.*) ordered that the proceeds of the auction be held in trust until the issue of the competing security interests could be determined.[2]

[¶ 4] At the auction, Pepperell's attorney attempted to enter into settlement discussions with the president of Mountain Heir, proposing to assign its security interest to Mountain Heir in exchange for $2000. Immediately following these discussions, Pepperell entered a bid on the restaurant equipment in order to preserve its claim of a superior security interest. Pepperell did not follow up on its alleged settlement with a confirmation letter, a request for money, or a tender of the allegedly assigned security interest.

[¶ 5] The court (*Fritzsche, J.*) granted summary judgment against Pepperell on its claim seeking a declaratory judgment as to its allegedly superior security interest. In granting the summary judgment, the court held that "as [Pepperell's] security interest had become unperfected there was no merit to the filing of the initial complaint and it should never have been brought consistent with the requirements of Rule 11, M.R.Civ. P." The court sanctioned Pepperell $500 for bringing this meritless claim. At the same time, the court allowed Pepperell to amend its complaint to state a contract claim based on the alleged settlement on the day of the auction. In its answer to the new contract claim, Mountain Heir asserted three counterclaims alleging abuse of process, interference with an advantageous business opportunity, and malicious prosecution.[3]

[¶ 6] Following a bench trial, the court (*Fritzsche, J.*) entered judgment against Pep-

---

1. *See* 11 M.R.S.A. § 9–403(2) (1995).

2. The escrow order was later dissolved on October 19, 1994, (*Brennan, J.*) on a finding that Pepperell did not have a likelihood of success on the merits of its claim alleging a superior security interest.

3. Pepperell claims that the court erred in construing the third counterclaim to be a malicious prosecution claim. That counterclaim alleged, among other things, the following:

¶ 21. The Plaintiff has filed a Supplemented (sic) Complaint for breach of an alleged oral contract between the Plaintiff and the Defendant.

¶ 22. Upon information and belief, this law suit by the Plaintiff is based solely upon spite and malice on behalf of the Plaintiff and its attorney directed personally at the President of the Defendant corporation.

While the court could have construed the third counterclaim to set forth only a claim for punitive damages based on the first two counterclaims, the allegations could also be read liberally to make out a claim of malicious prosecution. *See Chiappetta v. LeBlond*, 505 A.2d 783, 785 (Me.1986) (a pleading is sufficient so long as it provides fair notice of a claim).

perell on its breach of contract claim, against Mountain Heir on its abuse of process counterclaim, and for Mountain Heir on its malicious prosecution counterclaim, awarding Mountain Heir $7500 in attorney's fees and $2500 in punitive damages.[4] This appeal followed.

### I. The Competing Security Interests

■ [¶ 7] Pepperell first challenges the entry of a summary judgment. A party is entitled to summary judgment where there is no genuine issue of material fact and the party on the undisputed facts is entitled to judgment as a matter of law. *Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me.1993); M.R.Civ.P. 56(c).

■ [¶ 8] The material facts concerning the competing security interests are undisputed. On those facts, the trial court correctly found Mountain Heir to be entitled to a judgment as a matter of law pursuant to 11 M.R.S.A. § 9–403(2) (1995) which provides, in pertinent part, that:

> Except as provided in subsection (6)[5], a filed financing statement is effective for a period of 5 years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the 5–year period unless a continuation statement is filed prior to the lapse ... Upon lapse, the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.

The commentary following this section notes that "[u]nder subsection (2) the security interest becomes unperfected when filing lapses. Thereafter, the interest of the secured party is subject to defeat by purchasers and lienors even though before lapse the conflicting interest may have been junior." U.C.C. § 9–403 cmt. (1972). This is true even where the originally junior creditor had actual knowledge of the previously superior interest. *State Savings Bank v. Onawa State Bank*, 368 N.W.2d 161, 166 (Iowa 1985); *General Electric Credit Corp. v. Isaacs*, 90 Wash.2d 234, 581 P.2d 1032, 1035–37 (1978). Thus, Pepperell lost its priority as against Mountain Heir when its original filing expired without the statutorily required continuation statement.

■ [¶ 9] Pepperell argues, however, that because Mountain Heir had actual knowledge of Pepperell's interest, Pepperell is entitled to a continuing priority pursuant to 11 M.R.S.A. § 9–401(2) (1995). Its reliance on § 9–401(2) is misplaced. That section provides, in pertinent part, that:

> A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless ... effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

Pepperell did not file in an improper place or in fewer than all required places. Rather, it failed altogether to file a continuation statement, erroneously or otherwise. Section 9–401(2) is therefore entirely inapplicable to the establishment of priorities in this case.

[¶ 10] Pepperell next asserts that the court erred in imposing sanctions for the filing of its complaint for declaratory judgment. All pleadings must be signed as certification "that to the best of the signer's knowledge, information, and belief there is good ground to support it." M.R.Civ.P. 11. Where no such good ground exists, Rule 11 allows the court to impose an appropriate sanction. *Id.* A trial court's imposition of sanctions pursuant to Rule 11 is reviewed for abuse of discretion. *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 50 (Me.1996). The trial court here considered Pepperell's original claim in light of the clear mandate of § 9–403(2) and the obvious inapplicability of § 9–401(2) and concluded that

---

**4.** Mountain Heir voluntarily dismissed its second counterclaim alleging interference with an advantageous business opportunity and does not appeal the court's decision against it on its abuse of process counterclaim.

**5.** Subsection (6) applies to situations where the debtor is a transmitting utility or where a real estate mortgage is effective as a fixture filing. Neither of those situations exists here.

Pepperell had no good ground to support its claim of a superior security interest. On that basis, the court correctly determined that sanctions were appropriate and acted well within its discretion in imposing a sanction of $500 upon Pepperell.

## II. The Breach of Contract Claim

[¶ 11] Pepperell next challenges the entry of judgment against it on its claim that settlement discussions on the date of the auction culminated in the formation of a contract. Whether a contract exists is a question of fact.[6] *June Roberts Agency, Inc.*, 676 A.2d at 48. We review such questions for clear error, and will not reverse a trial court's factual determination if there is competent evidence in the record to support it. *Calaska Partners, Ltd. v. Corson*, 672 A.2d 1099, 1104 (Me.1996).

> To establish a legally binding agreement between parties, the mutual assent to be bound by all of its material terms must be reflected and manifested either expressly or impliedly in the contract and the contract must be sufficiently definite to enable a court to determine its exact meaning and fix any legal liability of the parties.

*June Roberts Agency, Inc.*, 676 A.2d at 48 (quoting *Smile, Inc. v. Moosehead Sanitary Dist.*, 649 A.2d 1103, 1105 (Me.1994)).

[¶ 12] There is ample competent evidence in the record to support the court's finding that there was no mutual assent to be bound and thus no legally binding agreement between the parties. The court heard evidence that Pepperell's attorney approached Mountain Heir's president without seeking the permission of Mountain Heir's attorney, that Pepperell bid on the restaurant equipment moments after the alleged agreement was finalized, and that Pepperell failed to take any action to document the alleged agreement with a confirmation letter, a request for money, or a tender of the allegedly assigned security interest. The court committed no error in finding that no contract existed between the parties.

## III. The Counterclaim

[¶ 13] Finally, Pepperell argues that the court erred in entering judgment against it on Mountain Heir's malicious prosecution counterclaim because Pepperell had probable cause to bring its breach of contract claim, and because the counterclaim was premature where there had not been a termination of Pepperell's breach of contract claim in Mountain Heir's favor.[7] Because we agree that the malicious prosecution counterclaim was premature, we do not reach the issue of probable cause.

[¶ 14] Maine has recognized three distinct causes of action related to the misuse of the legal system: (1) abuse of process,[8] (2) malicious prosecution (or wrong-

---

6. Although neither party raised the issue on appeal, the parties entered into a pre-trial stipulation which reads as follows: "an oral contract was entered into between the Plaintiff and the Defendant." At trial, however, the parties litigated the issue of contract formation, and neither party brought the existence of the pre-trial stipulation to the court's attention. Consequently, we deem the stipulation not to have been preserved. *Cf. Rush v. Aroostook*, 447 A.2d 478, 479 n. 2 (Me.1982) (a stipulation between litigants made under supervision of court derives effect from control of the court rather than from any virtue in the stipulation itself). *See also* M.R.Civ.P. 15(b).

7. In the past, when the issue was not properly raised, we declined to address the propriety of counterclaiming for malicious prosecution in the action providing the basis for the claim. *See Davis v. Currier*, 1997 ME 199, 704 A.2d 1207 n. 3 (issue not raised before the trial court or this Court). Here, although Pepperell did not raise the issue before the trial court, it apparently failed to do so only because it was unaware during trial that the court understood the counterclaim to be a claim for malicious prosecution. Because the issue has been raised and briefed before this Court, and because of the importance of the issue, we address it here.

8. Abuse of process is the "use of ... process in a manner not proper in the regular conduct of the proceedings" where there is an ulterior motive. *Goucher v. Dineen*, 471 A.2d 688, 689 (Me.1984) (quoting *Nadeau v. State*, 395 A.2d 107, 117 (Me.1978)). In contrast to a claim of wrongful use of civil proceedings which lies where there is no basis for an entire claim, abuse of process "covers the allegedly improper use of individual legal procedures after a suit has been filed properly. Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment." *Simon v. Navon*, 71 F.3d 9, 15 (1st Cir.1995) (construing Maine law) (citations omitted).

ful use of criminal proceedings), and (3) wrongful use of civil proceedings. Thus far, however, we have blended the latter two causes of action under the common heading of malicious prosecution.[9] Because Mountain Heir based its counterclaim on Pepperell's civil contract claim, the counterclaim is more properly termed "wrongful use of civil proceedings."

[¶ 15] The tort of wrongful use of civil proceedings exists where (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought.[10] RESTATEMENT (SECOND) OF TORTS § 674.[11]

[¶ 16] Favorable termination of the offending proceeding is an essential element of the claim. *Nadeau v. State*, 395 A.2d 107, 116 (Me.1978); *F.D.I.C. v. S. Prawer & Co.*, 829 F.Supp. 439, 444 n. 1 (D.Me. 1993) (construing Maine law). The issue of what constitutes termination of a proceeding is a question of law. RESTATEMENT (SECOND) OF TORTS §§ 673, 681B. Termination in favor of the claimant may occur upon the favorable adjudication of the claim by a competent tribunal, the withdrawal of the claim by the initial litigant, or the dismissal of the claim.[12] Mountain Heir, however, does not ask us to consider the circumstances in which dismissal or withdrawal will constitute favorable termination. Rather, because Pepperell's contract claim was pending when Mountain Heir

filed and tried its wrongful use counterclaim, Mountain Heir now urges us to hold that a wrongful use claim may be brought as a counterclaim to the offending proceeding where the claimant asserts that termination in its favor is a likely outcome of the offending proceeding.[13] We decline to do so.

[¶ 17] During the pendency of the offending proceeding, it is simply not possible to allege or prove that the proceeding has terminated in favor of the claimant, no matter how optimistic the claimant may be that the proceeding will ultimately terminate in his or her favor. To hold otherwise would allow wrongful use counterclaims to be filed in any matter where the defendant disputes the probable cause for the claim against it and would have the inevitable result of drawing the focus of litigation away from the substance of the original claim. The very nature of a wrongful use claim would therefore be eliminated by allowing the assertion of the claim before adjudication by a neutral tribunal or full termination of the proceedings by other means.

[¶ 18] Moreover, there can be no allegation that the proceedings have terminated in the claimant's favor until the possibility of change in the outcome of the offending action has been eliminated through the exhaustion of post-trial or appellate remedies. When an appeal is taken, "the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail." RESTATEMENT (SECOND) OF TORTS § 674, cmt. j. Accordingly, because a cause of action for mali-

---

9. *See, e.g., Larsen v. Hanscom*, 539 A.2d 627 (Me.1988) (malicious prosecution claim based on civil debt collection action); *Nyer v. Carter*, 367 A.2d 1375 (Me.1977) (malicious prosecution claim based on civil action for mortgage foreclosure).

10. Although the Restatement recognizes an exception to the termination element for wrongfully initiated *ex parte* proceedings, we are not presented with such a proceeding in this case and therefore do not address the existence of such an exception under Maine law.

11. Similarly, the tort of malicious prosecution exists where one initiates criminal proceedings without probable cause and with a primary pur-

pose other than that of bringing the offender to justice, and where the proceedings have terminated in favor of the accused. RESTATEMENT (SECOND) OF TORTS § 653.

12. *See*, RESTATEMENT (SECOND) OF TORTS § 674, comment j.

13. Mountain Heir relies on a reference in *Nyer v. Carter*, 367 A.2d at 1378 to the Statute of Marlbridge, enacted by Parliament in 1269, pursuant to which a "successful defendant in a maliciously prosecuted civil action was allowed to recover, *in that same action*, not only his costs but also his damages." Mountain Heir mistakes a recitation of the historical development of the cause of action for a holding of the Court.

cious prosecution or wrongful use of civil proceedings cannot accrue until the offending proceeding has fully terminated in favor of the original defendant inclusive of any right to or pendency of post-trial process or appeal,[14] such a claim may not be asserted in the very proceeding that forms the basis of the claim.[15]

[¶ 19] Because we now hold that a claim of wrongful use of civil proceedings may not be brought as a counterclaim to the offending proceeding, and because Mountain Heir asserted such a claim as a counterclaim to Pepperell's contract claim, we vacate the court's entry of judgment with respect to that counterclaim and remand for dismissal without prejudice.

The entry is:

Judgment against Pepperell Trust Company on its complaint affirmed.

Judgment for Mountain Heir Financial Corporation on its counterclaim for malicious prosecution vacated. Remanded with instruction to dismiss without prejudice.

---

**14.** *See, e.g., Lindenman v. Umscheid,* 255 Kan. 610, 875 P.2d 964, 975 (1994) (appeal period is to be considered in determining when a termination of the proceeding has occurred); *see also* RESTATEMENT (SECOND) OF TORTS § 674 cmt. j.

**15.** Most states that have encountered this issue have concluded that a "malicious prosecution" claim may not be brought as a counterclaim in the offending proceeding. *See generally* Vitauts M. Gulbis, *Nature of Termination of Civil Action Required to Satisfy Element of Favorable Termination to Support Action for Malicious Prosecution,* 30 A.L.R.4th 572, 583–85 (1984) and cases cited therein. *See also McCullough v. McCullough,* 263 Ga. 794, 439 S.E.2d 486 (1994); *Cox v. Klein,* 546 So.2d 120 (Fla.App.1989); *Barrett Mobile Home Transport, Inc. v. McGugin,* 530 So.2d 730 (Ala.1988); *Berman v. Karvounis,* 308 Md. 259, 518 A.2d 726 (1987); *Pronger v. O'Dell,* 127 Wis.2d 292, 379 N.W.2d 330 (App.1985); *First Federal Savings and Loan Ass'n of Gary v. Stone,* 467 N.E.2d 1226 (Ind.App.1984); *Oak Crest Civic Club v. Lowe,* 678 S.W.2d 93 (Tex.Ct. App.1984); *Industrial Power & Lighting Corp. v. Western Modular Corp.,* 623 P.2d 291 (Alaska 1981); *Whyburn v. Norwood,* 47 N.C.App. 310, 267 S.E.2d 374 (1980); *Massengale v. Lester,* 403 S.W.2d 697 (Ky.1966); *Euge v. Lemay Bank & Trust Co.,* 386 S.W.2d 398 (Mo.1965); *Farmers Gin Co. v. Ward,* 73 N.M. 405, 389 P.2d 9 (1964).